UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JIMMY LIPHAM, )<br>)<br>    Petitioner, )<br>)<br>v. )<br>)<br>STATE OF MAINE, )<br>)<br>    Respondent ) | Civil No. 09-12-B-W |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Jimmy Lipham has filed a 28 U.S.C. 2254 petition seeking relief from his Maine murder conviction. Lipham is serving a forty-year sentence. The State of Maine has filed an answer arguing that the federal claims pressed by Lipham have not been adequately presented to the state courts and, therefore, are not exhausted. Lipham has filed a reply. I recommend that the Court deny Lipham 28 U.S.C. § 2254 relief for the reasons that follow.

*Discussion*

**Factual Background**

The Maine Law Court summarized the factual background of Lipham's case as follows:

> On July 31, 2003, Jimmy Lipham and the decedent, David Langway, acquaintances since 1984, drove to Lipham's home in Glenburn. Upon arrival, Langway walked to a field behind the house to pick blueberries, while Lipham went inside to retrieve his Glock .45 caliber handgun. Lipham testified that the men intended to poach a deer, and that he hid the handgun from his wife because she would not approve. The two men then entered the woods behind the house.
> While in the woods, Lipham shot Langway in the back of the head, killing him. Lipham testified that he tripped and fell, causing the handgun to accidentally discharge. After the shooting, Lipham discarded Langway's wallet, shirt, and lunchbox in a Bangor dumpster. In the days following the shooting, Lipham dismembered and buried the body in the woods behind his house. He sought to conceal Langway's death by using Langway's food stamp card to purchase groceries, and having Langway's mail forwarded to a private mailbox opened by Lipham using the alias Jimmy Green.

1

> In September 2003, the police investigating Langway's disappearance stopped at Lipham's home when Lipham was visiting his family in Alabama. After speaking with Lipham's wife, the police conducted a search of the woods behind his house, where they found a skull fragment and a buried torso that DNA tests later confirmed were the remains of Langway.
>
> At the request of police, Lipham's wife placed a secretly recorded phone call to him in Alabama. During the call, Lipham's wife confronted him about the death of Langway, making several statements indicating that she believed Lipham had killed him intentionally. Lipham did not respond to her allegations, other than to direct her to file for a legal separation and a restraining order, and to tell the police nothing. Soon thereafter, Lipham was arrested in Alabama for the murder of Langway. When members of the Maine State Police arrived to supervise his extradition to Maine, Lipham made a voluntary statement confessing to the shooting, but claiming it was an accident.

State v. Lipham, 2006 ME 137, ¶¶ 2-5 910 A.2d 388, 390-91 (footnote omitted).  With regards to the taped husband/wife conversation, the Law Court noted:   "Mrs. Lipham's more damning statements include: 'I'm not stupid. I know what you did ...'; 'He was harmless. Why? Why did you do that? Why couldn't you just have said "Go to hell Dave, I quit," and just gone home'; and 'I'll never understand how you could have stood there and done that, I, I'll just never understand it.'" 2006 ME 137, ¶ 5 n.2; 910 A.2d at 390 n.2.

**Lipham's Five 28 U.S.C. § 2254 Claims**

Lipham's five 28 U.S.C. § 2254 claims are as follows: One, his rights under Miranda v. Arizona, 384 U.S. 436 (1966) were violated when he gave a statement on October 9, 2009, to a Maine State Police detective while Lipham was in custody in Alabama; two, authorities illegally recorded a call between Lipham and his wife, a recording to which his wife consented; three, his due process rights were violated when a lawyer was not appointed to him until October 13, 2003, although he had repeatedly requested one; four, the State of Maine murder statute and sentencing practice violated his due process and equal protection rights; and, five, the trial judge gave an improper instruction on reasonable doubt in contravention of the Sixth Amendment.

**State Court Challenges**

*Motion to suppress*

Through counsel, Lipham filed a motion to suppress statement made while he was in custody in an Alabama jail. At the hearing on the motion to suppress counsel explained that they were trying to suppress the portions of Lipham's October 9, 2003, statement made prior to the officer's Miranda-ization. The Superior Court ruled in substance:

> Detective Bryant White spoke with Defendant's wife (Carrie Lipham) on or about September 3, 2003. A recording and transcript of her statements on that date were admitted into evidence as State's Exhibits 1 and 1A. Carrie Lipham had several telephone conversations with the Defendant which were recorded. Approximately one month later, Detective Zamboni spoke with Defendant (who was in Alabama) by telephone (State's Exhibits 9 and 9A). Shortly thereafter, a warrant for Defendant's arrest was obtained (for which probable cause clearly existed) and Defendant was taken into custody by the Alabama authorities.
> Detective Zamboni traveled to Alabama to return the Defendant to Maine. Upon meeting the Detective, Lipham said, "I want to make a statement." He promptly made an unsolicited statement which was recorded by Zamboni (States Exhibits 10 and 10A). Neither this statement or any other statement made by Defendant to police authorities was made in violation of Defendant's constitutional rights. Each statement was utterly voluntary and not the result of any custodial interrogation.
> Regardless of whether Carrie's statements (regarding Jimmy's statements) would otherwise be subject to the Husband-Wife privilege, it is clear that Jimmy waived any claim of privilege by his own statements. Accordingly, Defendant's motions are denied. See State v. Boucher, 652 A.2d 76 (Me. 19[9]4).

(Order Mot. Suppress at 1.)

*Direct appeal*

In his direct appeal Lipham focused on a challenge of the admission of the taped conversation with his wife on the grounds of the state's husband/wife privilege and maintained the probative value of the audiotape outweighed the danger of unfair prejudice.[1]

---

[1] The Maine Law Court recognized three other claims brought by Lipham and explained as to these grounds:
Lipham also argues that (1) the remarks of the State during closing arguments amounted to prosecutorial misconduct; (2) the court erred by not granting Lipham's motion for a new trial;

3

*First post-conviction proceeding*

With regards to his first post-conviction petition the superior court indicated in its decision that in the post-conviction assignment order it had been made clear that the only ground to be considered was that of ineffective assistance of counsel. Lipham had included three other grounds – abuse of discretion in admitting certain evidence, unjustified sentence, and prosecutorial misconduct.[2]

*Second post-conviction proceeding*

In his second petition for state post-conviction review Lipham argued that the Maine murder statute was unconstitutional, that the jury in his case only found him guilty of knowing murder as opposed to intentional murder, and, yet, the judge sentenced him as if he had been convicted of intentional murder. He faulted his trial and appellate attorneys for failing to challenge the general jury verdict/sentencing practice in the state.[3] He also indicated that he directed his attorney for the first post-conviction petition to file an appeal and his attorney refused.[4] This petition was summarily dismissed, the superior court explaining:

---

and (3) the evidence was insufficient to support the conviction. Because we affirm the Superior Court's decision to admit the evidence of the recorded phone call over Lipham's objections of spousal privilege and unfair prejudice, we find his claims of prosecutorial misconduct and the need for a new trial to be unpersuasive.

Furthermore, the evidence in this case, when viewed in a light most favorable to the State, is sufficient for a jury to rationally find Lipham guilty of each element of intentional or knowing murder beyond a reasonable doubt. See State v. Kotredes, 2003 ME 142, ¶ 9, 838 A.2d 331, 335.

Lipham, 2006 ME 137, ¶ 1 n.1; 910 A.2d at 390 n.1

[2] At the close of its post-conviction order the Superior Court Justice noted:

The Court would restate as it did at the January 7, 2008, hearing that the arguments of prosecutorial misconduct and erroneous admission by the trial court of the exhibit reflecting the phone call between Mr. and Mrs. Lipham is not part of this proceeding. These issues were dealt with in the direct appeal to the Law Court. Lipham, 910 A.2d at 390 n.1.

(Order Post-Conviction Review at 11.)

[3] Lipham states that he instructed his appellate attorney to look into the implications of Apprendi v. New Jersey, 530 U.S. 466 (2000) apropos the Maine murder statute.

[4] Lipham has not raised any ineffective assistance claim in this 28 U.S.C. 2254 motion. With regards to post-conviction counsel Congress has made clear: "The ineffectiveness or incompetence of counsel during Federal or

4

> The petitioner alleges that he received ineffective assistance of counsel from the court-appointed attorney who represented him in his prior post-conviction review proceeding. He argues that his counsel was deficient in failing to file a timely notice of appeal upon the denial of his prior petition. An order denying a petition for post-conviction review is neither a criminal judgment nor a post-sentencing proceeding for the purpose of a subsequent petition for post-conviction review; therefore, one may not challenge such an order by filing a subsequent petition for post-conviction review. McEachern v. State, 456 A.2d 886, 890 (Me. 1983).

(Order Summ. Dismiss Post-conviction Pet. at 2.)

*Petition for certificate of probable cause*

Lipham filed a petition for a certificate of probable cause with the Maine Law Court, arguing that his second petition fell into an exception to the State's bar as articulated by the post-conviction court because the Maine murder statute/sentencing scheme violates "bed rock procedural due process protections." (Mem. Support Pet. Certificate Probable Cause at 2.) The Maine Law Court denied Lipham's petition explaining:

> We have reviewed the judgment entered in the Superior Court, and have fully considered the petition as well as the accompanying memorandum. The petitioner contends that the Superior Court's dismissal of his second petition for post-conviction review was in error, based upon this assertion that he "may fall into one of the exceptions" to the requirement in 15 M.R.S. § 2128(3) (2008) that all grounds for relief from a criminal judgment or from a post-sentencing proceeding shall be raised in a single post-conviction review action…." In his second petition, Lipham failed to allege any basis for permitting him to file a second post-conviction proceeding under 15 M.R.S. § 2128(3), or any bases for extending the time limit of 15 M.R.S. § 2128(5).

(Order Denying Certificate Probable Cause at 1.) See 15 M.R.S. § 2128(3) ("All grounds for relief from a criminal judgment or from a post-sentencing proceeding shall be raised in a single post-conviction review action and any grounds not so raised are waived unless the State or

---

State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

5

Federal Constitution otherwise require or unless the court determines that the ground could not reasonably have been raised in an earlier action.").

### Why Lipham is not Entitled to 28 U.S.C. § 2254 Relief

In Lipham's brief to the Maine Law Court on his direct appeal he did not articulate a single federal constitutional claim, nor did he cite to any United Sates Supreme Court case or the United States Constitution. With respect to the admission of the taped conversation with his wife, he focused on the evidentiary issues surrounding Maine and Alabama marital privileges and an assertion that the trial court abused its discretion when applying Maine Rule of Evidence 403 and allowing the phone call to be admitted.[5] Lipham did no more than mention his October 9, 2003, statement to the police; Lipham did not challenge the superior court's decision denying the motion to suppress with respect to the voluntariness of his statements on this date. The appellate brief did not explore the ramification surrounding the fact that his conversation with his wife was secretly recorded and there is no reference to a delay in appointing a lawyer.[6] There is no discussion of the reasonable doubt instruction or the constitutionality of the Maine murder statute.

---

[5] Lipham made an argument of prosecutorial misconduct, the denial of the motion for a new trial, and an insufficiency of the evidence claim that are not reasserted here and that were also not framed as having a basis in federal constitutional law.

[6] With regards to the factual predicate for a 28 U.S.C. § 2254 claim, Congress cautions:
> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>   **(A)** the claim relies on—
>     **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>   **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The First Circuit summarized the 28 U.S.C. § 2254 exhaustion of state remedies requirement in Dutil v. Murphy, noting: "The exhaustion requirement, while at times technical and arcane, is straightforward in this context. A claim for habeas corpus relief has been exhausted where the claim has been 'fairly presented' to the state courts." 550 F.3d 154, 158 (1st Cir. 2008) (citing Josseylyn v. Dennehy, 475 F.3d 1, 3 (2st Cir. 2007)). "Fair presentation means that the petitioner 'must show that he tendered his federal claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." ' " Id. (quoting Clements v. Maloney, 485 F.3d 158, 162 (1st Cir.2007), quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir.2000)); see also Baldwin v. Reese, 541 U.S. 27 (2004) "[A] habeas petitioner fairly presents a claim," the Dutil Panel explained, "by doing any of the following: '(1) citing a provision of the federal constitution; (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution.'" 550 F.3d at 158 (quoting Clements, 485 F.3d at 162)). Lipham's brief to the Maine Law Court on direct appeal did not meet this standard for exhaustion as to any of his 28 U.S.C. § 2254 claims.[7]

To the extent that any of Lipham's 28 U.S.C. § 2254 claims overlap with the legal and factual issues adjudicated by the superior court apropos the motion to suppress, Lipham failed to fully exhaust those constitutional claims because he did not give the Maine Law Court an

---

[7] In his reply brief, Lipham argues that he did not know that his Miranda v. Arizona, 384 U.S. 436 (1966) claim had not been exhausted until the State of Maine filed its response to this 28 U.S.C. § 2254 petition. The bottom line is that the factual predicate for any Miranda claim was known to Lipham and counsel at the time that he made the motion to suppress. Lipham clearly must have had a copy of the Maine Law Court's decision on his direct appeal in hand when, pro se, he sent notice to the State of Maine that he filed a petition for a writ of certiorari of that decision with the United States Supreme Court. (See State App. C.)

opportunity to rule on the merits of the federal claims. See Jackson v. Coalter, 337 F.3d 74, 85 - 87 (1st Cir. 2003).

It is true that Lipham's petition for a certificate of probable cause as to his second petition for post-conviction review did clearly raise a constitutional challenge to the Maine murder statute/sentencing scheme. However, as set forth above, the Maine Law court decided that Lipham's claim was barred under 15 M.R.S. § 2128(3) and (5). "[W]here a state court has denied the claim on an independent and adequate state-law ground, whether procedural or substantive, federal habeas review is barred." Pina v. Maloney, 565 F.3d 48, 52 (1st Cir. 2009). This Court has no basis at his juncture to question whether these two procedural rules -- the one requiring the presentation of all post-conviction claims in the first post-conviction petition and the other setting a statute of limitations -- "are regularly and consistently enforced by the state courts." Id. at 53; compare Yeboah-Sefah v. Ficco, 556 F.3d 53, 75 (1st Cir.2009), with Pina, 565 F.3d at 53. Lipham has not attempted to demonstrate cause and prejudice for failing to raise this claim in his direct appeal or his first post-conviction petition and Lipham's argument concerning the constitutionality of the Maine murder statute and sentencing scheme is not one of "actual innocence" so as to invite a discussion of whether or not he might still be entitled to federal review. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); accord Yeboah-Sefah, 556 F.3d at 66.[8]

---

[8] Although the State has not submitted the transcripts of the trial testimony in view of the strength of its argument that Lipham has not adequately exhausted/has procedurally defaulted his 28 U.S.C. § 2254 claims, I do note that Lipham's wife did testify at trial as demonstrated by the State's appellate brief on direct appeal in which it cites the incriminating trial testimony of Lipham's wife and the first post-conviction order referring to her testimony and defense counsel's efforts to impeach her.

*Conclusion*

I recommend that the Court deny Lipham 28 U.S.C. § 2254 relief for the reasons above. I further recommend that a certificate of appealability should not issue in the event Lipham files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 23, 2009.